580 A.2d 1183

**THE MORNING CALL, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, BOARD OF PARDONS, an Agency of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1990.

Decided Oct. 2, 1990.

Malcolm J. Gross, with him, Michael A. Henry, Gross, McGinley, LaBarre & Eaton, Allentown, for petitioner.

Rosalyn K. Robinson, Deputy Gen. Counsel, Harrisburg, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The Morning Call, Inc.[1] (Morning Call), has filed an Amended Motion for Judgment on the Pleadings, requesting this court to determine the Morning Call's right to obtain and the Board of Pardons' (Board) duty to disclose the individual votes of the five members of the Board considering the application of Richard Klinger (Klinger) for commutation of his sentence of life imprisonment.

On December 14, 1989, the Board conducted a public hearing to consider the application of Klinger for commutation of his sentence of life imprisonment. In a private session, the Board voted four-to-one to recommend to the Governor that Klinger's application be granted. An employee of the Morning Call sought to obtain the individual votes of the Board members who considered Klinger's application. In accordance with the Board's policy to disclose its actions, the Board's secretary informed the employee that the Board was recommending to the Governor that the commutation be granted, but refused to disclose the individual votes of the Board members.

The Morning Call then filed a Petition for Review requesting declaratory relief concerning its right to access and the Board's duty to disclose the names and votes of individual members of the Board regarding Klinger's application for commutation pursuant to Article 4, Section 9(b) of the Pennsylvania Constitution (Constitution) as amended in 1967.[2] The Board filed an Answer, contending that their present system of disposing of applications for commutation

1. The Morning Call, Inc. is a Pennsylvania corporation located in Allentown, Pennsylvania, which publishes a daily newspaper known as the Allentown Morning Call.

2. The Morning Call also alleged that the Board violated the Sunshine Act and Right To Know Law.

complied with the requirements of Article 4, Section 9(b) of the Constitution. The Board also argued under New Matter that relief should not be granted because the Morning Call failed to join Klinger as an indispensable party to this action. The Morning Call then filed with this court a Motion for Judgment on the Pleadings which was subsequently amended.

The issues now before us are whether Article 4, Section 9(b) of the Pennsylvania Constitution as amended in 1967, which requires the Board to keep records of its actions open for public inspection, includes records which indicate the individual names and votes of each member of the Board who has voted on an application for commutation of a sentence, and if it does, whether Klinger must be joined as an indispensable party in order to grant the relief requested.

The Board contends that Article 4, Section 9 of the Constitution does not require that votes be cast individually, publicly, or that individual votes be recorded. While we agree that the Constitution does not specifically require that Board members' votes be cast individually, we do not agree that the intent of Article 4, Section 9 of the Constitution was to have Board members vote privately on pardons and applications for commutations of sentences or to prevent the public from inspecting the individual votes of Board members when the Board votes by roll call.

When the Pennsylvania Constitution was originally drafted in 1776, Section 20 gave the Supreme Executive Council the power to grant reprieves and pardons, but no mention was made regarding the procedure of the sessions at which the reprieves and pardons were granted. When the Constitution was amended in 1874, the Supreme Executive Council became known as the Board of Pardons, and Section 20 was replaced by Article 4, Section 9, which added specific language addressing whether the public had access to those hearings. Article 4, Section 9 of the Constitution of 1874 then read as follows:

> [B]ut no pardon shall be granted, nor sentence commuted, except upon the recommendation in writing of the Lieutenant Governor, Secretary of the Commonwealth, Attorney General and Secretary of Internal Affairs, or any three of them, *after full hearing, upon due public notice and in open session* . . . .

By adopting this provision, the electorate mandated that actions by the Board relating to pardons or commutations of sentences were now to be conducted in public. Any member of the public had a right to attend any session of the Board to see firsthand how each individual Board member voted.

The Constitution was again revised in 1967 based on recommendations made by the Woodside Commission.[3] Desiring to make the actions of the Board available to those who were not in attendance of a session, the Woodside Commission, *inter alia*, recommended that the Board not only be required to conduct their hearings in public, but also be required to keep records of its actions which would be available for public inspection at all times. The 1967 amendment to Article 4, Section 9(b) of the Constitution did, in fact, adopt the recommended change which read as follows:

> (b) The Board of Pardons shall consist of the Lieutenant Governor who shall be chairman, the Attorney General and three members appointed by the Governor with the consent of two-thirds of the members elected to the Senate, one for two years, one for four years, and one for six years, and thereafter for full terms of six years. The three members appointed by the Governor shall be residents of Pennsylvania and shall be recognized leaders in their fields; one shall be a members of the bar, one a penologist, and the third a doctor of medicine, psychiatrist or psychologist. *The board shall keep records of its*

3. Report of the Commission on Constitutional Revision, 1959, The Honorable Robert E. Woodside, Judge, Superior Court of Pennsylvania, Chairman of the Commission.

*actions, which shall at all times be open for public inspection.*[4]

The amendments to Article 4, Section 9 of the Constitution were made to ensure public access to the proceedings and records of the Board. The 1874 amendment required that the action of the Board be accomplished in open session *including voting* on matters that came before the Board. The 1967 amendment was added to rectify what the Woodside Commission and then the electorate believed was a shortcoming in the process by requiring that the Board make its records open to the public.

The Board's argument then, that it can merely provide to the public outcomes of votes taken in private sessions, is in contravention of Article 4, Section 9. This provision requires that a full hearing, including voting on matters that come before the Board, take place at a session open to the public, that the actions of the Board be recorded, and that those records be open to the public for inspection at all times. This is not to say, however, that all votes must be taken by roll call. If a voice vote is taken requiring only an "aye" or "nay" response, the record need only reflect the results of that vote. However, if the vote is made by roll call, the individual name and vote of the Board member must be recorded.[5] In either instance, the publicly

4. Although the Constitution was amended again in 1975, Article 4, Section 9(a) remained unchanged, and Section 9(b) was only slightly changed to read as follows:

    The Board of Pardons shall consist of the Lieutenant Governor who shall be chairman, the Attorney General and three members appointed by the Governor with the consent of two-thirds or a majority of the members elected to the Senate as is specified by law for terms of six years. The three members appointed by the Governor shall be residents of Pennsylvania and shall be recognized leaders in their fields; one shall be a member of the bar, one a penologist, and the third a doctor of medicine, psychiatrist or psychologist. The board shall keep records of its actions, which shall at all times be open for public inspection. (Underlined words changed from 1967 amendment.)

5. While we do not need to address the issues of whether the Board has violated the Right–To–Know Law or the Sunshine Act because we are granting relief to the Morning Call under the Constitutional provision,

cast vote, whether by voice or roll call, must be recorded and made available for public inspection.[6]

Accordingly, if in the private session, the Board voted on the application of Klinger for commutation of his sentence by roll call, and the individual names and votes of the Board members were recorded, the Morning Call has the right to obtain and the Board has the duty to disclose to the public the individual votes of those members who voted on Klinger's application.

## ORDER

AND NOW, this 2nd day of October, 1990, the Morning Call's Motion for Judgment on the Pleadings is granted. The Morning Call shall have a right to access the records of the meetings of the Board of Pardons, including accessing those records concerning the votes on the application of Richard Klinger for commutation of his life sentence.

Concurring and dissenting opinion by SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge, concurring and dissenting.

I agree with the result reached by the majority and with their historical development of the constitutional proceeding. However, I feel compelled to point out that though the majority opinion indicates that one of the two issues before this Court is whether Klinger must be joined as an indispensable party in order to grant the requested relief, this issue is not addressed, except cursorily in a footnote with no supporting authority or rationale.

An indispensable party is defined by Pennsylvania courts as one whose rights are so directly connected with and

it is noted that a similar provision regarding roll call voting and recordation exists under Section 275 of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. § 275.

**6.** Because the public has been conferred the right to access the names and votes of individual Board members on applications for commutations and pardons when the Board votes by roll call, we find that Klinger has no personal interest in the outcome of this case and is not an indispensable party to this action.

affected by litigation that he must be a party of record to protect such rights. *Columbia Gas Transmission Corporation v. Diamond Fuel Company,* 464 Pa. 377, 346 A.2d 788 (1975). No privileges or rights of Klinger will be impaired by our granting access to the recorded votes of Board members who voted on Klinger's application. Hence, I concur that Klinger is not an indispensable party to this action.

However, I must respectfully dissent to the majority's overbroad interpretation of the constitutional provision at issue. Article 4, Section 9(b) of the Constitution provides that "[t]he board shall keep records of its actions, which shall at all times be open for public inspection." The argument advanced by The Morning Call is limited to a request that the Board of Pardons keep open for public inspection its records of the votes of its members on applications for executive clemency. The majority should confine its holding solely to that specific issue. The constitutional provision merely grants public access to records of its actions. It does not dictate what actions of the Board are required to be contained in the record. Under the facts of the case before us it is premature to determine how records are to be kept and what types of votes, i.e. roll call, must be recorded. The issue of propriety of record-keeping should be addressed when it is squarely presented to this Court and should not be prematurely anticipated here.

Moreover, to determine that the Board has a "duty to disclose to the public the individual votes of those members who voted" is overly and unnecessarily broad. The Board's only duty is to make the records of its actions available for public inspection; whereas the majority imposes a duty upon the Board not contemplated by the constitutional provision, the duty to disclose.

As the limited issue before us was the request that the Board keep open for public inspection its records of votes, the majority is more expansive in its holding and in its grant of relief than dictated by the circumstances in this case.